IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND

ROSCOE BARTLETT, et al.         :
                                :
v.                              :      Civil Action WMN-05-3135
                                :
FREDERICK COUNTY, MARYLAND      :


                              **MEMORANDUM**

Before the Court is Defendant's Motion to Dismiss. Paper No. 14. The motion is fully briefed. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion should be granted.

In this suit, Plaintiffs challenge Defendant Frederick County's refusal to allow them to access the public water and sewer lines that run across a 104 acre parcel of land owned by Plaintiffs Roscoe and Ellen Bartlett. In December of 1998,[1] the Bartletts entered into a contract with Frederick County that granted the County an easement to install those water and/or sewer lines. Pursuant to the contract, the Bartletts were paid the sum of $6,475.00 for the easement. The easement contract also contained language, discussed below, that granted Plaintiffs certain rights to connect to the water and sewer lines. It is the scope of those rights that is at the center of this conflict.

---

[1] The Complaint erroneously states that the parties entered into the contract in December 1996. Plaintiffs acknowledge in their opposition that the contract was executed in 1998. Opp. 1.

On or about May 17, 2004, the Bartletts entered into a contract with Plaintiff American Heritage Communities, Inc. for the sale of the property.  American Heritage seeks to acquire the property as part of its plan to build a 100 bed nursing home, along with an independent living/continuing care retirement community for as many as 1617 additional residents.  In November of 2004, American Heritage received a special exception from the Frederick County Board of Appeals permitting it to construct the nursing home project subject to certain conditions including the condition that the facility would be serviced by private wells and septic systems.  This decision was based upon American Heritage's indication to the Board that the property was in an area designated as "No Planned Service" for water and sewer.  Compl., Ex. 2 at 1.  In its decision, the Board of Appeals allowed that, if American Heritage wished to tap into the designated "Denied Access" water and sewer lines that ran across the subject property, it should bring the proposed change before the Board of Appeals and it would also need approval from the Planning Commission and the Board of County Commissioners.  American Heritage did not appeal this decision.

Looking for another way around the Board's decision, American Heritage applied to the Frederick County Planning Commission for a "text amendment" to Frederick County's

Comprehensive Plan that would allow them to access the sewer line that ran through the Bartlett's property.  On May 18, 2005, the Planning Commission denied the text amendment as inconsistent with the Comprehensive Plan.

On or about October 17, 2005, Plaintiffs filed suit in the Circuit Court for Frederick County seeking an injunction preventing Frederick County from taking any further actions that are inconsistent with, or that interfere with, Plaintiffs' purported rights under the easement contract (Count I), as well as a declaration that the easement contract permits American Heritage and the Bartletts to access the water and sewer lines on the Bartlett property to develop the nursing home/continuing care facility (Count II).  The Complaint also includes claims for breach of contract (Counts III and IV), negligent misrepresentation (Count V), unconstitutional taking (Count VI), impairment of contract (Count VII), and violation of 42 U.S.C. § 1983 (Count VIII).  Defendant timely removed the action to this Court and has now moved to dismiss the Complaint in its entirety.

The Court begins by noting that, with the possible exception of the negligent misrepresentation claim, the viability of all of Plaintiffs' claims requires the adoption of Plaintiffs' interpretation of the easement contract.[2]  Counts I though IV and

---

[2] Plaintiffs acknowledge throughout their opposition the centrality of this contract to their claims.  See Opp. 1 (characterizing this action as "aris[ing] out of" the 1998

Count VII make direct reference to the contract.  Plaintiffs' unconstitutional taking and § 1983 claims also turn on the construction of the easement contract since the "property right" that Plaintiffs assert was improperly taken from them is the right of access allegedly given in the easement contract.  <u>See</u> Opp. 12 ("The County has unconstitutionally taken Plaintiffs' property right to access the sewer for development") and 18 (arguing in support of their § 1983 claim that "the County, in asserting that Plaintiffs do not have the right, despite the terms of the [easement c]ontract, to develop the Bartlett Property, deprives Plaintiffs of their constitutionally protected property rights").  If, as Defendant contends, the easement contract granted no such right, all these claims must fail.

The relevant language in the easement contract is as follows:

> A. Grantor will be permitted, but not required, to connect existing-structures to the sewer line, in accordance with the Water and Sewerage Plan and Department of Public Works Rules and Regulations.  All costs associated with any such connections will be paid by Grantor, including capacity or "tap" fees.
>
> B. Grantee represents unto Grantor that the proposed sewer line is designed to include capacity sufficient to serve the Grantor's property when developed, if developed to a density contemplated by the current Comprehensive Plan designation for the

---

easement contract).

4

>      property OFFICE/RESEARCH.  Additional
>      capacity may be provided if required for
>      future development and if available.
>
>      Provision A & B above will survive the
>      recording of the deed from Grantor to the
>      County.

Comp., Ex. 1.  Defendant relies primarily on the "existing-structure" language in Paragraph A, while Plaintiffs essentially ignore Paragraph A and advance, instead, a seriously flawed misreading of Paragraph B.

   Maryland has long followed an objective approach to contract interpretation.  <u>Slice v. Carozza Properties, Inc.</u>, 137 A.2d 687, 693 (Md. 1958).  Under that approach, "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding, or unless there is fraud, duress or mutual mistake. . . .  [W]here there has been an integration of an agreement, those who executed it will not be allowed to place their own interpretation on what it means or was intended to mean."  <u>Id.</u>  Furthermore, "the terms of a contract must be given their ordinary and usual meaning as utilized within the context of the contract."  <u>Langston v. Langston</u>, 784 A.2d 1086, 1095 (Md. 2001).

   Paragraph A states that the Grantor of the easement "will be permitted . . . to connect <u>existing structures</u> to the <u>sewer</u>

5

line." (Emphasis added). Obviously, as the nursing home is yet to be built, it was not an "existing structure" in 1998 when the easement contract was executed.[3] Notably, there is no mention anywhere in the contract of any right to connect any structure to a public water line.

By its terms, Paragraph B merely states that "the proposed sewer line [was] designed to include capacity sufficient to serve the Grantor's property, if developed to a density contemplated by the current Comprehensive Plan." (Emphasis added). There is no explicit "permitted to connect" language as there is in Paragraph A. Plaintiffs argue that without the recognition of an implicit right to connect future structures to the sewer line, this "designed capacity" language would be "superfluous and nonsensical." Opp. 4. Not so. As Defendant notes, it is very reasonable that the owner of a large parcel of land across which a sewer line is to be constructed might desire and require assurances that the line would be sufficiently sized that it would not soon need to be dug up and replaced. Reply 4.

The Court would go further and acknowledge that it is likely that, at the time the Bartletts entered into the easement contract, they were anticipating developing their property. Consistent with that anticipated development, they bargained for

---

[3] Although not mentioned in the Complaint, the attachments to the Complaint indicate that there was a farmhouse of some historic significance on the property, along with a barn and some farm out buildings. See Ex. 2 (discussing possible restoration of the existing house on the Bartlett property) and Ex. 4 (Site Plan showing existing barn and out buildings).

6

the assurance that should they, at some future date, seek permission to tap into the sewer line, the line would have sufficient capacity to meet their anticipated needs.  There is nothing in the contract, however, to indicate that they had bargained for the assurance that, once sought, the permission would be automatically granted.  If that was the agreement, the parties would have used the same "will be permitted to connect" language they used in the immediately preceding paragraph.  They did not.[4]

Looking to the plain language of the 1998 easement contract, the Court finds no right to connect to the public sewer line any structure except for those already on the property at the time the contract was executed.  Thus, there is no breach of that contract and there are no rights, constitutional or otherwise, of which Plaintiffs have been deprived.

Turning briefly to Plaintiffs' negligent misrepresentation claim, the Court finds it must be dismissed as well.  First, the claim is inadequately pled.  Under the Federal Rules, allegations of fraud or misrepresentation must be pled "with particularity."

---

[4] As Defendant also notes, it is questionable whether it would have been legally permissible for the County to contractually bind itself to a future zoning or land use decision.  See Attman/Glazer P.B. Co. v. Mayor and Aldermen of Annapolis, 552 A.2d 1277, 1282 (Md. 1989) (holding that municipalities "could not by agreement lawfully bind themselves to a future zoning or conditional use decision").

7

Fed. R. Civ. P. 9(b).  To state a claim for misrepresentation, a plaintiff "must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements." <u>Adams v. NVR Homes, Inc.</u>, 193 F.R.D. 243, 250 (D. Md. 2000). Although Plaintiffs assert that they "have identified the 'who, when and where' of their claim," Opp. 10, the portions of the Complaint to which they cite, ¶¶ 11, 85, make no such identification.  Paragraph 11 of the Complaint simply states that, in December [1998], the Bartletts and Frederick County entered into an easement contract.  Paragraph 85 restates the same allegation.  Paragraph 82, which contains the only detail as to any alleged misrepresentation, reads in its entirety, "Frederick County negligently asserted a false statement to the Bartletts when it stated that the Bartlett Contract provided that the water/sewer lines would serve Plaintiffs' property, when it was developed."  This paragraph identifies neither the time, place, nor speaker of the alleged statement.

Second, had Plaintiffs supplied these missing details, the claim would still fail as Plaintiffs' assertion of justifiable reliance on the alleged misrepresentation is belied by the language of the contract itself.  The contract provides, "[t]his agreement contains all of the terms of the contract between the parties with respect to the obtaining of the necessary easement only and contains no representations as to any other issues relating to the provision of water or sewer service to the subject property."  Complaint, Ex. 1 at 2.  Given this clear

language in the contract, the Bartletts could not reasonably have relied on any statements to the contrary made in negotiations leading up to the execution of the contract.

    For all of these reasons, Defendant's motion to dismiss must be granted as to all of Plaintiffs' claims.  A separate order consistent with this Memorandum will issue.

                                             /s/
                                  William M. Nickerson
                                  Senior United States District Judge

Dated: April 25, 2006